# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
### EASTERN DIVISION

| | |
|---|---|
| DESMOND ARNEZ MILLS, ) | |
| ) | |
|     *Plaintiff*, ) | |
| ) | |
| v. ) | No. 4:24-cv-00680-JMD |
| ) | |
| ANNE L. PRECYTHE, et al., ) | |
| ) | |
|     *Defendants*. ) | |

## **MEMORANDUM AND ORDER**

This matter is before the Court following remand from the United States Court of Appeals for the Eighth Circuit. Before this case was reassigned to the presiding judge, this Court dismissed the suit because Desmond Mills failed to include a "clear statement" in his complaint that he was suing the defendants in their individual capacities. The Eighth Circuit overturned its previous "clear statement" requirement and instructed this Court to determine whether Mills sued the defendants in their individual capacities.[1] Mills has since filed an amended complaint, expressly suing all defendants in their official and individual capacities. Therefore, the Court need not determine how Mills had originally sought to sue defendants. Because Mills is proceeding *in forma pauperis*, the Court conducts an initial review of his amended complaint under 28 U.S.C. § 1915(e).

### Standard of Review

Under § 1915(e), the Court is required to dismiss a complaint filed without prepayment of fees if it is frivolous, malicious, or fails to state a claim on which relief may be granted. "Though pro se complaints are to be construed liberally . . . they still must allege

---

[1] The Court had construed Mills's complaint as bringing claims against defendants only in their official capacities under the "clear statement" rule. Shortly after this determination, the Eighth Circuit overturned the "clear statement" rule in *S.A.A. v. Geisler*, 127 F.4th 1133, 1138–39 (8th Cir. 2025) (en banc), and remanded this action.

sufficient facts to support the claims advanced." *Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004). To state a claim under 42 U.S.C. § 1983, a plaintiff must demonstrate a plausible claim for relief, which is more than a "mere possibility of misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. Determining whether a complaint states a plausible claim for relief is a context-specific task that requires the reviewing court to draw upon judicial experience and common sense. *Id.* at 679. "To determine whether a complaint states a facially plausible claim, we accept the factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor." *Reinhart v. Weitzell*, 964 F.3d 684, 688 (8th Cir. 2020).

**Background**

Mills brings his amended complaint under 42 U.S.C. § 1983, alleging constitutional violations arising out of an incident in which he was stabbed by a fellow inmate while in administrative segregation at the Eastern Reception, Diagnostic and Correctional Center. He names as defendants the following custodial staff at the correctional center: Richard Adams (Warden); John Doe (Correctional Officer); Jane Doe (Correctional Officer); Unknown Berger (Correctional Officer); Unknown Bighorse (Sgt.); John Doe (Investigator); Tim Freeman (Assistant Warden); Casey Motley (Correctional Officer); Stephanie Tandarich (Supervisor, Security Intelligence); and Unknown Deaton (Correctional Officer). He also names as defendants the following employees of Centurion Health: CEO Steven Wheeler and Jane Roe, a nurse at the correctional center. He names the following Missouri Department of Corrections officials: Anne L. Precythe (Director) and Jason Lewis (Deputy Division Director). Finally, he names as a defendant his attacker, inmate Joseph Resz.

Mills states that on May 31, 2023, Joseph Resz stabbed him more than twelve times with a sharpened food tray. He alleges Defendants Bighorse, Deaton, Motley, and Berger were working as custodial staff in Housing Unit 1 on that day, and that they did not perform their required security rounds every 30 minutes. Additionally, he states custodial staff working at the control center, John and Jane Doe, who had a duty to monitor closed circuit television cameras, never notified officers that Resz was hiding outside his cell waiting in the shower.

As alleged by Mills, he and Resz were housed in administrative segregation and scheduled on separate 30-minute rotations during which they were allowed out of their cells to shower. Resz's 30-minute rotation was immediately before Mills's. During Resz's rotation, when officers announced that all inmates on rotation must return to their cells and lock down, Resz did not return to his cell. Rather, he hid in a shower stall and laid in wait for Mills to come out of his cell during his rotation. Mills alleges that Resz walked around between 15 to 25 minutes on Mills's rotation before he attacked Mills. Also, Mills states that Resz had recently stabbed another offender, which Mills believes should have alerted staff that he was dangerous and volatile.

Resz attacked Mills and stabbed him with a sharpened food tray in his face, throat, and hands. Staff broke up the fight, and Mills sought treatment at the medical unit. An unknown nurse, Jane Roe, examined Mills and said, "You need to go to the hospital but this institution don't like paying for hospital bills." ECF 35 at 7. Instead, the nurse gave Mills what he characterizes as simple first aid, applying an adhesive substance to his wounds. A few hours later, the nurse reapplied the adhesive to Mills's neck wound because the bleeding was not controlled. Mills alleges that "[a]t no time did plaintiff receive a proper examination to ensure of no internal injuries, nor was plaintiff given a tetanus shot to ensure an infection/disease wouldn't set in." *Id.*

After Resz attacked Mills, Officer Deaton told Mills that he had seen Resz walking around during the first 15 to 25 minutes of Mills's 30-minute rotation and "told the other officers to lock Mr. Resz down but they said don't worry about it." *Id.* at 7.

Mills also takes issue with Resz's ability to fashion the handmade weapon he used in the attack. He states Resz crafted this weapon out of a "segregation serving tray." ECF 35 at 6. Mills states inmates are not allowed to have trays in their cells outside meal times. To this end, custodial staff are tasked with conducting an inventory of these trays before and after each meal. If a tray turns up missing, the correctional officers are required to search cells until it is recovered. Mills states that staff "are trained to understand the danger/seriousness of not promptly retrieving the correct amount of trays." *Id.* at 6. At some point, the tray inventory in Housing Unit 1 was not done or was done incorrectly, because Resz constructed his knife out of his lunch tray.

In addition to these claims of failure to protect, Mills alleges that the medical staff's failure to properly treat his serious injuries caused him complications, including pressure in his throat upon swallowing. Also, because of the trauma of the attack, when he touches or looks at his face and throat, he experiences fear, anxiety, panic attacks, and depression. He also suffers from physical pain, mental anguish, fright, shock, embarrassment, humiliation, night terrors, and insomnia. Prison doctors have prescribed an antidepressant and a sleep aid to help alleviate these symptoms.

As to his claims against the Missouri Department of Corrections directors, Mills states Director Precythe failed to properly train her subordinates. He alleges Deputy Director Lewis was deliberately indifferent by "failing to investigate information indicating unconstitutional acts were occurring along with policy and procedures not being followed." *Id.* at 9. He also alleges Adams, Warden of the correctional center, is responsible for all his

subordinates' actions. *Id.* He alleges Supervisor Tandarich is responsible for training her subordinates and is in charge of the safety and security of the prison.

For relief, Mills seeks compensatory damages of $100,000 jointly and severally against the custodial Defendants and $75,000 jointly and severally against the medical Defendants. He seeks $65,000 against each Defendant for punitive damages. He states, "I believe I'm entitled to that because each defendant played a part in the breakdown of the policy and procedures which created an environment possible for an inmate who's known to be aggressive and dangerous [to] make a knife out [of] a[n] administrative segregation food tray, and stay out [past] his recreation, stab me over 12 times in vital parts of my body, then say it's my fault." *Id.* at 10.

## Analysis

I.   **Individual Capacity Claims**

A.   **Failure to Protect—Defendants Bighorse, Deaton, Motley, Berger, Jane and John Doe**

Under Eighth Circuit precedent, prison inmates "have a clearly established Eighth Amendment right to be protected from violence by other inmates." *Curry v. Crist*, 226 F.3d 974, 977 (8th Cir. 2000); *see also Young v. Selk*, 508 F.3d 868, 871 (8th Cir. 2007). Prison officials must take reasonable measures to guarantee inmate safety and to protect prisoners from violence at the hands of other prisoners. *Berry v. Sherman*, 365 F.3d 631, 633–34 (8th Cir. 2004).

But not every injury suffered by one prisoner at the hands of another prisoner translates into constitutional liability. *Whitson v. Stone Cnty. Jail*, 602 F.3d 920, 923 (8th Cir. 2010). "Rather, prison officials violate the Eighth Amendment only when they exhibit a deliberate or callous indifference to an inmate's safety." *Patterson v. Kelley*, 902 F.3d 845, 851 (8th Cir. 2018) (internal quotation marks omitted). That is a high standard. Deliberative indifference is more than negligence; instead, it is "akin to that of criminal recklessness,"

requiring "a highly culpable state of mind approaching actual intent." *Blair v. Bowersox*, 929 F.3d 981, 987–88 (8th Cir. 2019).

To prove an Eighth Amendment violation, an inmate must fulfill two requirements: one objective and one subjective. *Irving v. Dormire*, 519 F.3d 441, 446 (8th Cir. 2008). The first requirement is that, viewed objectively, the alleged deprivation of rights is sufficiently serious; it must be "objectively intolerable" and "excessive." *Farmer v. Brennan*, 511 U.S. 825, 834, 837, 846 (1994). The second requirement is a subjective inquiry and requires that the prisoner prove that the prison official had a "sufficiently culpable state of mind." *Id*. at 834. "A prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Lenz v. Wade*, 490 F.3d 991, 995 (8th Cir. 2007) (cleaned up).

The Eighth Circuit has concluded that the risk of an inmate-on-inmate assault can sometimes satisfy the objective requirement when the attacker is known to be dangerous and volatile. *See Vandevender v. Sass*, 970 F.3d 972, 976 (8th Cir. 2020); *see also Young*, 508 F.3d at 873 (explaining that inmate who assaulted plaintiff posed a substantial risk of serious harm because the inmate was "particularly volatile . . . was easily offended and enraged, and that he was willing to attack . . . when in a state of rage"). In determining whether a substantial risk of serious harm exists, the Court looks at factors such as (1) whether the plaintiff had been threatened by the assaulting inmate; (2) whether the assaulting inmate was known to be a violent, volatile inmate; (3) whether the plaintiff and the assaulting inmate had previously argued or fought, been cellmates, or even knew each other; and (4) whether either the plaintiff or the assaulting inmate had recently been in protective custody or in a restrictive status such as administrative segregation. *See Vandevender*, 970 F.3d at 976.

Mills alleges Resz was known at the correctional center to be a dangerous, aggressive, and violent offender with mental health issues—and that these facts were also present in documents from other institutions. *See* ECF 35 at 6. "It's documented that the attacking offender [Resz] had recently stab [sic] and swapped bodily fluids with an H.I.V. positive offender." *Id.* at 7. Mills states that staff had already identified Resz as "unusually dangerous," *id.* at 6, and Resz was housed in administrative segregation.

But on the flip side, there is little in the complaint to suggest that the particular risk allegedly at issue here—shanking with a sharpened food tray—was anything more than isolated. For the risk of inmate assault to become sufficiently serious, it must be "pervasive"—something more than "a single incident or isolated incidents." *Vandevender*, 970 F.3d at 977 (citation omitted). Mills alleges little from which the Court can infer that the threat of an individual stealing a lunch tray and sharpening it into a makeshift weapon was anything more than an isolated risk.

The Court nonetheless concludes at this preliminary stage that Mills has sufficiently overcome the § 1915 hurdle for his assertion that Resz posed a substantial risk of serious harm on the date of his attack. Although it is not clear at this early stage of frivolity review that the Eighth Circuit assessed the question of isolated incidents, the Eighth Circuit stated that "Mills's complaint amounted to more than mere violations of prison policy and stated potentially viable claims against the Jane Roe nurse and at least some of the prison official defendants," and the Eighth Circuit cited a case about the risk of violence posed by other inmates. *Mills v. Precythe*, 2025 WL 1527356, at *1 (8th Cir. May 29, 2025) (citing *Vandevender*, 970 F.3d at 976). So at this early stage of frivolity review, the Court is bound by the Eighth Circuit's conclusion about Mills's complaint.

The second requirement for a claim about failure to protect is that the defendant subjectively acted or failed to act with deliberate indifference to the plaintiff's safety. *Farmer*,

- 7 -

511 U.S. at 838. Negligence is insufficient to establish deliberate indifference. *Jackson v. Everett*, 140 F.3d 1149, 1152 (8th Cir. 1998). Rather, for a defendant to have acted with deliberate indifference, "he must have recklessly disregarded a known, excessive risk of serious harm to" a plaintiff's safety. *Pagels v. Morrison*, 335 F.3d 736, 740 (8th Cir. 2003). That is, a plaintiff must demonstrate that the defendant "actually intended to deprive him of some right," or that the defendant "acted with reckless disregard of his right to be free from violent attacks by fellow inmates." *Miller v. Solem*, 728 F.2d 1020, 1024 (8th Cir. 1984). The defendant must "know[ ] of" and "consciously" disregard "an excessive risk to inmate health or safety." *Farmer*, 511 U.S. at 837, 839.

Mills alleges Defendant Deaton told "the other officers"—Bighorse, Motley, and Berger—that Resz was outside his cell after his recreation period, was walking around for the first 15 to 25 minutes of Mills's recreation period, and that the other officers needed to "lock Mr. Resz down." ECF 35 at 6–7. Mills alleges the other officers told Deaton "don't worry about it." *Id.* at 7. This statement could be read as disregarding the risk or instead as informing Deaton that he did not need to worry because they (the other officers) would resolve the situation. Because Mills is *pro se*, the Court will construe the complaint liberally and conclude that this statement supports his allegations that Bighorse, Motley, and Berger knew of the risk and "consciously" disregarded it.

The same, however, cannot be said about Deaton. According to the complaint, he did act. He instructed other officers to lock Resz down. The complaint includes no allegation of what Deaton did or did not do after the other officers responded to his instruction to lock Resz down. Without more, Mills has not alleged sufficient facts to claim that Deaton's behavior constituted "reckless disregard of a known risk." *Cf. Jackson*, 140 F.3d at 1152–53 (holding that a prison security officer was entitled for qualified immunity, even if he was "arguably

negligent," because he had "promptly investigated" an anonymous note asserting that one prisoner planned to stab another and had "reported the note to his supervisor").

The Court also concludes that the allegations about failing to comply with prison regulations do not state a claim. Defendants Bighorse, Deaton, Berger, and Motley were assigned to Housing Unit 1 on the date of the attack and were responsible for doing security rounds every 30 minutes. Mills alleges that had these officers performed their security rounds, it is likely they would have noticed that Resz was out of bounds. Similarly, Mills alleges that the control room operators, Jane and John Doe, had a "required job duty to monitor Security Closed Circuit Television Cameras." ECF 35 at 5.

These allegations sound in negligence, not deliberate disregard akin to criminal recklessness. Mills needed to allege that each of these individuals "*actually knows* of the substantial risk and fails to respond reasonably to it." *Young*, 508 F.3d at 873 (emphasis added). The Eighth Circuit has "repeatedly held that violations of prison policy or regulations alone are not enough to establish deliberate indifference under the Eighth Amendment." *Vandevender*, 970 F.3d at 978; *see also Johnson v. Schurman*, 145 F.4th 897, 905 (8th Cir. 2025). However, the complaint does allege actual knowledge for Bighorse, Motley, and Berger—that knowledge allegedly came from Deaton. Claims against Bighorse, Motley, and Berger can thus proceed on the theory that they had actual knowledge and did nothing with it.

Jane and John Doe present a closer question. The complaint lacks any allegation that Jane and John Doe actually knew Resz was at high risk of being in the same location as Mills. *Contra Young*, 508 F.3d at 873–74 (no qualified immunity where officials knew the plaintiff was in the same cell as a "particularly volatile" inmate). Still, the Eighth Circuit has held that a plaintiff "need not necessarily show that the actor actually knew of the substantial risk of harm to an inmate; the district court can infer knowledge if the risk was obvious."

*Letterman v. Does*, 789 F.3d 856, 862 (8th Cir. 2015); *Farmer*, 511 U.S. at 842 (explaining that "a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious"). More, "a plaintiff is *not* required to allege and prove that the defendant or defendants specifically knew about or anticipated the precise source of the harm." *Krien v. Norris*, 309 F.3d 487, 491 (8th Cir. 2002) (emphasis in original). But it is not enough to allege that defendants should have known of an excessive risk of harm. *Blair*, 929 F.3d at 987. Rather, Mills must allege that John and Jane Doe "had been exposed to information concerning the risk and thus must have known about it" and "knew that their conduct was inappropriate in light of the risk." *Letterman*, 789 F.3d at 862 (internal citations omitted).

Here, Mills alleges that prison officials knew through past events at the correction center and through documentation from other institutions that Resz was "a dangerous, aggressive, and violent offender with mental issues." ECF 35 at 6. Assuming that Mills's allegations are true, this is not a case where Mills "has no evidence of other attacks." *Johnson*, 145 F.4th at 905. Mills also alleges that John and Jane Doe "never notified staff" that Resz was outside of his cell and in a shower stall. ECF 35 at 5.

This is not to say that a jury will infer that John and Jane Doe knew about the risk Resz posed and knew that their conduct was inappropriate in light of the risk. *See Whitson*, 602 F.3d at 926 n.3 (citing *Spruce v. Sargent*, 149 F.3d 783 (8th Cir. 1998)). As written, Mills's allegations are somewhat ambiguous about what exactly John and Jane Doe did or failed to do. The adversarial process should explore whether the allegations sound in negligence or deliberate indifference. The consequences of negligence can be high in a prison because "inmates are, on the whole, 'dangerous men.'" *Young*, 508 U.S. at 873 (citation omitted). But the high degree of danger inherent to prisons does not convert ordinary negligence to criminal recklessness. The Supreme Court has made clear that negligence—

even costly negligence—is not sufficient to state a claim for deliberate indifference. *Farmer*, 511 U.S. at 836; *see also Vandevender*, 970 F.3d at 978 ("We have repeatedly held that violations of prison policy or regulations alone are not enough to establish deliberate indifference under the Eighth Amendment.").

### B. Deliberate Indifference to Serious Medical Needs—Defendant Nurse Jane Roe

Under the Eighth Amendment, the government has an obligation to provide medical care to those whom it is incarcerating. *Estelle v. Gamble*, 429 U.S. 97, 103 (1976). To establish constitutionally inadequate medical care, the inmate must show that a prison official's conduct amounted to deliberate indifference. *Dulany v. Carnahan*, 132 F.3d 1234, 1237–38 (8th Cir. 1997). To establish deliberate indifference, a plaintiff must prove that he suffered from an objectively serious medical need, and that prison officials actually knew of and disregarded that need. *Roberts v. Kopel*, 917 F.3d 1039, 1042 (8th Cir. 2019); *see also Hamner v. Burls*, 937 F.3d 1171, 1177 (8th Cir. 2019).

As to the objective prong, a "serious medical need is one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Coleman v. Rahija*, 114 F.3d 778, 784 (8th Cir. 1997) (citation omitted). As to the subjective prong, an inmate must demonstrate that a prison health care provider's actions were "so inappropriate as to evidence intentional maltreatment or a refusal to provide essential care." *Redmond v. Kosinski*, 999 F.3d 1116, 1120 (8th Cir. 2021) (citation omitted). In other words, "deliberate indifference requires a highly culpable state of mind approaching actual intent." *Kulkay v. Roy*, 847 F.3d 637, 643 (8th Cir. 2017); *see also Barton v. Taber*, 908 F.3d 1119, 1124 (8th Cir. 2018) (explaining that "plaintiff must establish a mental state akin to criminal recklessness: disregarding a known risk to the arrestee's health" (citation omitted)).

The Eighth Circuit has already concluded that Mills "stated potentially viable claims against the Jane Roe nurse." *Mills*, 2025 WL 1527356, at *1.  In particular, Mills came to her with multiple stab wounds on his face and neck, and Roe allegedly stated, "You need to go to the hospital but this institution don't like paying for hospital bills."  ECF 35 at 7.  Roe knew of Mills's serious medical condition and recognized the need for hospital treatment but was deliberately indifferent to this need.  Instead, she used first aid to patch up his wounds.  The Court will issue service on Roe after she is identified through discovery.

### C.    Supervisory Defendants—Defendants Precythe, Adams, Lewis, Freeman, Tandarich, and Wheeler

Mills alleges the following prison officials in supervisory positions are liable for their subordinates' actions: Anne Precythe (Director, Missouri Department of Corrections); Richard Adams (Warden, Eastern Reception, Diagnostic and Correctional Center); Jason Lewis (Deputy Division Director, Missouri Department of Corrections); Tim Freeman (Asst. Warden, Eastern Reception, Diagnostic and Correctional Center); and Stephanie Tandarich (Supervisor, Security Intelligence, Eastern Reception, Diagnostic and Correctional Center).  Also, he names as a defendant the CEO of Centurion, Steven Wheeler.

As to these defendants, vicarious liability is not available in § 1983 suits.  *Marsh v. Phelps Cnty.*, 902 F.3d 745, 754 (8th Cir. 2018).  Rather, defendants are "personally liable only for their own misconduct."  *S.M. v. Krigbaum*, 808 F.3d 335, 340 (8th Cir. 2015).  "[A] supervising officer can be liable for an inferior officer's constitutional violation only if he directly participated in the constitutional violation, or if his failure to train or supervise the offending actor caused the deprivation."  *Parrish v. Ball*, 594 F.3d 993, 1001 (8th Cir. 2010) (citation omitted); *see also Morris v. Cradduck*, 954 F.3d 1055, 1060 (8th Cir. 2020) ("To state a claim against a supervisor, a plaintiff must show that the supervising official, through his own individual actions, violated the Constitution.").  "[A] general responsibility for supervising the operations of a prison is insufficient to establish the personal involvement

required to support liability." *Camberos v. Branstad*, 73 F.3d 174, 176 (8th Cir. 1995); *see also Reynolds v. Dormire*, 636 F.3d 976, 981 (8th Cir. 2011).

Mills has made no allegations that these supervisory defendants directly participated in the alleged constitutional violations. To the extent Mills alleges any failure to train on the part of these defendants, he has done so only in conclusory fashion. *See, e.g.*, ECF 35 at 9 ("Anne L. Precythe failed to train her subordinates [defendants] who worked the control center."). Even liberally construed, the Court is not required to accept as true Mills's conclusory allegations that the supervisory defendants committed constitutional violations in their training. *See Barton v. Taber*, 820 F.3d 958, 964 (8th Cir. 2016); *see also Brown v. Green Tree Servicing LLC*, 820 F.3d 371, 372–73 (8th Cir. 2016) (stating that a court must accept factual allegations in a complaint as true but is not required to "accept as true any legal conclusion couched as a factual allegation" (citation omitted)). Because Mills has alleged no factual content to support any allegations of a failure to train, the Court will dismiss his claims against defendants Precythe, Adams, Lewis, Freeman, Tandarich, and Wheeler.

### D.     Defendant John Doe (Investigator)

Mills alleges that an unknown investigator falsified documents as part of Mills's informal resolution request, grievance, and grievance appeal at the correctional center. Again, this statement is made in a conclusory fashion: "Plaintiff explained that the camera footage will show the investigating staff member (John Doe #138996) produce falsified documents despite the preponderance of evidence to support plaintiff's complaint." ECF 35 at 9. Even liberally construed, Mills's amended complaint does not contain any factual allegations sufficient to plausibly suggest Doe falsified documents. Mills makes a "naked assertion[] devoid of further factual enhancement." *Christopherson v. Bushner*, 33 F.4th 495, 499 (8th Cir. 2022). Mills provides neither facts about the means by which Doe falsified

documents, nor Doe's intent. *Cf. id.* at 500 (criticizing plaintiff's "obtuse statements" that "say nothing about . . . Defendants' specific roles"); *United States ex rel. Joshi v. St. Luke's Hosp., Inc.*, 441 F.3d 552, 556 (8th Cir. 2006) (explaining that "the complainant must identify the who, what, where, when, and how of the alleged fraud" (citation omitted)). Mills offers no facts about how Doe's alleged conduct injured him. Indeed, this Court struggles to discern whether plaintiff claims that Doe is liable for the alleged Eighth Amendment violations or for some other violation. *See also Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir. 1993) (holding that the prison grievance process does not create a liberty interest requiring due process protection under the Fourteenth Amendment). Although this court liberally construes *pro se* complaints, this Court need not "assume facts that are not alleged." *Stone*, 364 F.3d at 915. Mills does not provide "sufficient factual information . . . to raise a right to relief above a speculative level." *Christopherson*, 33 F.4th at 501 (citation omitted).

Moreover, to the extent Mills alleges supervisory liability against Doe for the alleged Eighth Amendment violations, his claim must be dismissed for the reasons explained in Part I.C. Mills does not assert that Doe was in the position to train or supervise officers. Also, Mills made his informal resolution request *after* the attack against him. Mills asserts no facts that Doe "directly participated" in a constitutional violation, nor that a constitutional violation was caused by Doe's "failure to train or supervise the offending actor." *Parrish*, 594 F.3d at 1001. For this reason, the Court dismisses any claims brought against investigative staff member defendant John Doe.

**II.     Official Capacity Claims**

As discussed in the Court's Memorandum and Order dated February 6, 2025, Mills's claims against defendants brought in their official capacities must be dismissed. ECF 17. "A core tenet of 42 U.S.C. §1983 jurisprudence is that an official-capacity suit against an individual is really a suit against that official's government entity." *Banks v. Slay*, 875 F.3d

876, 878 (8th Cir. 2017). Put another way, a "suit against a public employee in his or her official capacity is merely a suit against the public employer." *Johnson v. Outboard Marine Corp.*, 172 F.3d 531, 535 (8th Cir. 1999). Thus, Mills's official-capacity claims against the defendants he alleges are employees of the Missouri Department of Corrections are claims against the Department, which is a state agency. A state agency is not a "person" for purposes of section 1983. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989); *Barket, Levy & Fine, Inc. v. St. Louis Thermal Energy Corp.*, 948 F.2d 1084, 1086 (8th Cir. 1991) ("An agency exercising state power is not a 'person' subject to suit under section 1983 if the agency is entitled to the state's sovereign immunity under the Eleventh Amendment." (citation omitted)). The Missouri Department of Corrections is a state agency, immune from suit for damages by state sovereign immunity. *See Harris v. McSwain*, 417 Fed. Appx. 594, 595 (8th Cir. 2011); *Walker v. Mo. Dep't of Corr.*, 213 F.3d 1035, 1036 (8th Cir. 2000). Therefore, Mills's official-capacity claims against the Department employees—Precythe, Adams, Jane and John Doe, Berger, Bighorse, John Doe (Investigator), Lewis, Freeman, Motley, Tandarich, and Deaton—must be dismissed for failure to state a claim.

As to the medical defendants, Nurse Jane Roe and CEO Steven Wheeler, Mills's official-capacity claims also must be dismissed. Private employees and contractors who provide medical care in state prisons are "state actors," so they may be sued under section 1983. *See Davis v. Buchanan Cnty., Mo.*, 11 F.4th 604, 617 (8th Cir. 2021). But, as discussed above, an "official capacity" claim brought against an individual is actually brought "against the public employer." *See Johnson*, 172 F.3d at 535. If Mills's claims against Nurse Roe and Wheeler are "construed as claims against the governmental entity," *Rockwell v. Strohmyer*, 8:24-cv-00265, 2025 WL 2322466, at *2 (D. Neb. Aug. 12, 2025) (collecting cases), then the claims are barred by state sovereign immunity, like Mills's claims against the Department employees in their official capacities.

Mills's claims against Nurse Roe and Wheeler in their official capacities still fail even if the claims are construed as claims against Nurse Roe and Wheeler's employer, Centurion Health, the company contracted to provide health care services at Department facilities. *See Houston v. McKinney*, 4:19-cv-1901, 2019 WL 6875914, at *4 (E.D. Mo. Dec. 17, 2019) (holding that an official capacity claim against a doctor was a claim against Corizon Health Care, the doctor's employer and governmental contractor). A corporation cannot be held liable under section 1983 "on a respondeat superior theory." *Smith v. Insley's Inc.*, 499 F.3d 875, 880 (8th Cir. 2007). Rather, to support a claim against such a corporation, Mills "must show that there was a policy, custom, or official action that inflicted an actionable injury." *Johnson v. Hamilton*, 452 F.3d 967, 973 (8th Cir. 2006); *see also Sanders v. Sears, Roebuck & Co.*, 984 F.2d 972, 976 (8th Cir. 1993) (stating that a corporation acting under color of state law will only be held liable where "there is a policy, custom or action by those who represent official policy that inflicts injury actionable under § 1983"). Mills has not alleged that any policy, custom, or official action of Centurion Health inflicted his injuries. His claims against defendants Nurse Roe and Steven Wheeler in their official capacities must be dismissed.

### III.   State Law Claims

In a footnote to the Court's prior Memorandum and Order, the Court liberally construed Mills's complaint to possibly allege state law negligence claims against Nurse Roe, but declined to invoke supplemental jurisdiction. ECF 17 at 7 n.2. Likewise, the Court noted that Mills's factual allegations support a state-law claim for battery against Resz.[2] *Id.* at 8

---

[2] Any § 1983 claim Plaintiff makes against Resz fails. Section 1983 imposes liability on government actors acting under color of state law. "Private actors may incur section 1983 liability only if they are willing participants in a joint action with public servants acting under color of state law." *Johnson*, 172 F.3d at 536. To state a claim against a private actor under section 1983, a plaintiff "must establish, at the very least, an agreement or meeting of the minds between the private and state actors, and a corresponding violation of the plaintiffs' rights under the Constitution or laws of the United States." *Id.* Here, Plaintiff does not allege Resz came to an understanding with any state actors to violate Plaintiff's

n.3.  On appeal, the Eighth Circuit reinstated the potential state law claims against Nurse Roe and Resz.  *See Mills*, 2025 WL 1527356, at *1.  After these rulings, Mills amended his complaint, alleging essentially the same facts as in his original complaint.  *See In re Wireless Tel. Fed. Cost Recovery Fees Litig.*, 396 F.3d 922, 928 (8th Cir. 2005) ("It is well-established that an amended complaint supercedes [sic] an original complaint and renders the original complaint without legal effect.").  While Mills did not explicitly assert any state law claims, the Eighth Circuit's decision expressly "reinstate[s] them, *Mills*, 2025 WL 1527356, at *1, and liberal construction requires that "if the essence of an allegation is discernible . . . then the district court should construe the complaint in a way that permits the layperson's claim to be considered within the proper legal framework." *Stone*, 364 F.3d at 915.  "And where state law claims involve the same facts as a federal question, the state claims are within supplemental jurisdiction of the court." *Uland v. City of Winsted*, 570 F. Supp. 2d 1114, 1118 (D. Minn. 2008) (citing 28 U.S.C. § 1367(a)); *see also Fugett v. Douglas Cnty., Neb.*, 8:21-cv-125, 2021 WL 2419546, at *2–3 (D. Neb. May 26, 2021) (recommending that plaintiff's "state law claims for negligence and medical malpractice/medical negligence" were part of the "same case or controversy" as the Eighth Amendment § 1983 claims).  The Court has supplemental jurisdiction over Mills's state law claims. *McLaurin v. Prater*, 30 F.3d 982, 984–85 (8th Cir. 1994).

## IV. Discovery Motions

Mills has filed multiple discovery motions seeking conduct violations and mental health records for Resz; data and surveillance footage from the correctional center; and the identities of Jane and John Doe and Jane Roe.  Mills's motions are premature.  The Court has not yet issued a case management order or authorized discovery in this case. *Rodgers v.*

---

constitutional rights.  His § 1983 claims against Resz will be dismissed for failure to state a claim.

*Christopher Montgomery*, 1:23-cv-76, 2024 WL 960937, at *2 (E.D. Mo. Mar. 6, 2024). Defendants are under an obligation to preserve potentially relevant evidence under their control. Any failure to preserve such evidence might lead to sanctions for spoliation of evidence. *See Greyhound Lines, Inc. v. Wade*, 485 F.3d 1032, 1035 (8th Cir. 2007). Mills may renew requests for relief in discovery disputes, if necessary, once discovery has commenced. ECF 40, 41, 43, 48, and 49. At that time, Mills must comply with the presiding judge's standing orders about discovery disputes.

V. **Motion to Appoint Counsel**

Finally, Mills filed a motion to appoint counsel. The motion will be denied at this time. In civil cases, a *pro se* litigant does not have a constitutional or statutory right to appointed counsel. *Ward v. Smith*, 721 F.3d 940, 942 (8th Cir. 2013). Rather, a district court may appoint counsel in a civil case if the court is "convinced that an indigent plaintiff has stated a non-frivolous claim . . . and where the nature of the litigation is such that plaintiff as well as the court will benefit from the assistance of counsel." *Patterson v. Kelley*, 902 F.3d 845, 850 (8th Cir. 2018) (citation omitted). When determining whether to appoint counsel for an indigent litigant, a court considers relevant factors such as the complexity of the case, the ability of the *pro se* litigant to investigate the facts, the existence of conflicting testimony, and the ability of the *pro se* litigant to present his or her claim. *Phillips v. Jasper Cnty. Jail*, 437 F.3d 791, 794 (8th Cir. 2006).

After reviewing these factors, the Court finds that the appointment of counsel is not warranted at this time. Mills has demonstrated, at this point, that he can adequately present his claims to the Court. Additionally, neither the factual nor the legal issues in this case appear to be complex. The Court will entertain future motions for appointment of counsel as the case progresses if needed.

**IT IS HEREBY ORDERED** that the Clerk of Court shall issue process upon the amended complaint in accordance with the waiver agreement the Court maintains with the Missouri Attorney General's Office as to defendants Unknown Berger, Unknown Bighorse, and Casey Motley, in their individual capacities.

**IT IS FURTHER ORDERED** that the Clerk of the Court shall issue process upon the amended complaint as to defendant Joseph Resz, in his individual capacity.

**IT IS FURTHER ORDERED** that Mills's claims brought against defendants Anne L. Precythe, Richard Adams, Unknown Deaton, John Doe (Investigator), Jason Lewis, Tim Freeman, Stephanie Tandarich, and Steven Wheeler, in their individual capacities are **DISMISSED** without prejudice for failure to state a claim upon which relief may be granted.

**IT IS FURTHER ORDERED** that Mills's claims brought against all defendants in their official capacities are **DISMISSED** without prejudice for failure to state a claim upon which relief may be granted.

**IT IS FURTHER ORDERED** that Mills's motion to appoint counsel is **DENIED** without prejudice.  ECF 44.

**IT IS FURTHER ORDERED** that Mills's motions seeking discovery are **DENIED** without prejudice.  ECF 40, 41, 43, 48, and 49.

**IT IS FURTHER ORDERED** that Mills's amended motions for leave to appeal in forma pauperis are **DENIED** as moot.  ECF 34 and 39.

An Order of Partial Dismissal will accompany this Opinion, Memorandum and Order.

Dated this 30th day of December, 2025.

JOSHUA M. DIVINE
UNITED STATES DISTRICT JUDGE